IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Phillip Wade Grimes, Personal ) | |
| Representative of the Estate of O.G., ) | C.A. No. 8:16-1410-HMH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| Young Life, Inc., Inner Quest, Inc., ) | |
| and Adventure Experiences, Inc. ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the cross-motions for summary judgment of Defendants Young Life, Inc. ("Young Life") and Inner Quest, Inc. ("Inner Quest"). After consideration, the court grants Young Life's motion and denies Inner Quest's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the death of Olivia Grimes ("Olivia"), at Young Life's camp facility, Carolina Point, in July 2015. (Young Life Mem. Supp. Mot. Summ. J. 2, ECF No. 100-1.) The incident occurred when Olivia fell from a three-person giant swing (the "swing") and was fatally injured. (Id. at 2, ECF No. 100-1.)

In January 2015, Young Life requested that Inner Quest provide a quote for the construction of the swing at the Carolina Point facility, which is located in both North and South Carolina. (Id. at 3-4, ECF No. 100-1.) Carolina Point's offices are located in North Carolina. (Id. at 4 n.2, ECF No. 100-1.) The swing was to be constructed on the South Carolina section of Carolina Point. (Id. at 3-4 n.2), ECF No. 100-1.) An Inner Quest representative conducted a site visit to Carolina Point on February 21, 2015. (Young Life Mot. Summ. J. Ex. 5 (Johnson Decl.

1

Ex. B (Feb. 22, 2015 email)), ECF No. 100-5.) On February 22, 2015, Young Life requested by email that Inner Quest send a final contract for the construction of the swing. (Id. Ex. 5 (Johnson Ex. B (Feb. 22, 2015 email)), ECF No. 100-5.) Inner Quest emailed Young Life the final contract and requested that Young Life sign and return the contract if Young Life agreed to the contract's terms. (Inner Quest Mot. Summ. J. Ex. 2 (Contract 2), ECF No. 102-2.) The contract contained an indemnification clause, which states:

> The risk of use of the Challenge Course/Climbing Wall and ancillary Equipment, by any person after completion of the service performed by INNER QUEST pursuant to this Contract shall be the sole responsibility of the Client. The Client agrees to release, protect and indemnify (that is, defend and pay, including costs and attorneys [sic] fees) INNER QUEST, its staff, owners and directors from any claim for any loss or injury, including death, however caused, arising in whole or in part from the authorized or unauthorized use of the Challenge Course/Climbing Wall or Equipment. The only exception to the Client's agreement of release and indemnity is a claim of loss which arises solely (that is, no other factor – human, environmental or otherwise – contributed to such a loss) from a negligent act or omission by INNER QUEST in the performance of its contractual obligations.

(Id. Ex. 2 (Contract 2), ECF No. 102-2.) A Young Life representative signed the contract from the Carolina Point office located in North Carolina and emailed it to Inner Quest. (Young Life Mot. Summ. J. Ex. 5 (Johnson Decl. ¶ 8 & Ex. D to Johnson Decl. (Signed Contract)), ECF No. 100-1.) Subsequently, Inner Quest began construction of the swing, which was completed on April 9, 2016. (Id. Ex. 7 (Inner Quest Ans. Pl. First Interrog. ¶ 5), ECF No. 100-7.) On April 20, 2015, Young Life paid the remaining balance owed for construction of the swing. (Id. Ex. 5 (Johnson Decl. ¶ 11), ECF No. 100-5.)

On December 2, 2015, Phillip Wade Grimes, Olivia's personal representative, filed the instant case alleging negligence and strict liability causes of action in the Circuit Court for Polk County, Florida. (Notice of Removal Ex. 1 (State Ct. Docs. 10), ECF No. 1-1.) Young Life and

2

Adventure Experiences removed the case to the Middle District of Florida on January 5, 2016. (Notice of Removal, ECF No. 1.) The case was transferred to this court pursuant to 28 U.S.C. § 1406(a). (May 2, 2016 Order, ECF No. 31.) On June 1, 2016, Grimes amended the complaint and added Inner Quest as a defendant. (Am. Compl., ECF No. 54.) On July 20, 2016, Inner Quest answered the amended complaint and crossclaimed against Young Life for contractual and equitable indemnity. (Inner Quest Ans. Am. Compl., ECF No. 74.) On December 21, 2016, Young Life filed a motion for summary judgment on Inner Quest's crossclaims for indemnity. (Young Life. Mot. Summ. J., ECF No. 100.) Inner Quest responded and also moved for summary judgment on its crossclaims on January 4, 2017. (Inner Quest Mot. Summ. J., ECF No. 102.) On January 18, 2017, Young Life replied in support of its motion and responded in opposition to Inner Quest's motion. (Young Life Reply, ECF No. 105; Young Life Resp. Opp'n Inner Quest Mot. Summ. J., ECF No. 106.) Inner Quest replied on January 25, 2017. (Inner Quest Reply, ECF No. 109.) This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Contractual Indemnity

Inner Quest and Young Life have filed cross motions for summary judgment on Inner Quest's crossclaim for contractual indemnity. Both parties acknowledge that the contract contains an indemnity clause. (Young Life Mem. Supp. Mot. Summ. J. 8-9, ECF No. 100-1; Inner Quest Mem. Supp. Mot. Summ. J. 2-3, ECF No. 102-1.) However, the parties disagree about whether the indemnity clause is enforceable. Young Life argues that the purpose of the contract was as a services contract primarily for the design and construction of the swing and, therefore, common law choice of law rules apply. (Young Life Mem. Supp. Mot. Summ. J. 13, ECF No. 100-1.) Applying the common law, Young Life argues that, because the contract was entered into in North Carolina, North Carolina law applies. (Young Life Mot. Summ. J. Ex. 1 (Mem. Supp. Mot. Summ. J. 13), ECF No. 100-1.)

Under North Carolina law,

> [a]ny promise or agreement in, or in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance or appliance . . . purporting to indemnify or hold harmless the promisee . . . against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee, . . . is against public policy and is void and unenforceable.

N.C. Gen. Stat. § 22B-1. Therefore, Young Life argues that the indemnity clause is void and unenforceable. (Young Life Mem. Supp. Mot. Summ. J. 13-14, ECF No. 100-1.)

In contrast, Inner Quest argues that the contract was primarily for the sale of goods delivered in South Carolina and, therefore, the South Carolina Uniform Commercial Code's ("UCC") choice of law rules apply. (Inner Quest Mem. Supp. Mot. Summ. J. 4-5, ECF No. 102-1.) Inner Quest submits that, under the UCC's choice of law rules, South Carolina law governs this action. (Id. at 4-5, ECF No. 102-1.) Further, under South Carolina law, Inner Quest argues the indemnity clause is enforceable. (Id., ECF No. 102-1 (citing S.C. Code Ann. § 32-2-10).)

The court must apply South Carolina choice of law rules because this case was transferred to the District of South Carolina pursuant to 28 U.S.C. § 1406(a) and there is no choice of law provision in the contract. See Myelle v. Am. Cyanamid Co., 57 F.3d 411, 413 (4th Cir. 1995); Team IA, Inc. v. Lucas, 717 S.E.2d 103, 108-09 (S.C. Ct. App. 2011). South Carolina's common law choice of law rule for contracts is that "the law governing the enforcement [of the contract] is the law of the place where the contract is made." Livingston v. Atlantic Coastline R. Co., 180 S.E. 343, 345 (S.C. 1935); see also Witt v. Am. Tr. Ass'ns, Inc., 860 F. Supp. 295, 300 (D.S.C 1994) (noting that, in contract actions, South Carolina courts

apply the substantive law of the place where the contract was formed for questions regarding formation, interpretation, or validity, and the law of the place of performance when performance is at issue). In contrast, the UCC choice of law rules for contracts for the sales of goods are limited to transactions for which the predominate purpose is a transaction for goods. See Plantation Shutter Co. v. Ezell, 492 S.E.2d 404, 406 (S.C. Ct. App. 1997). The UCC choice of law rules state that where there is "an appropriate relation to [South Carolina]" and the parties have not previously agreed on choice of law, the UCC applies. S.C. Code Ann. § 36-1-301.

Thus, as an initial matter the court must consider whether the contract at issue is predominately a contract for services or the sale of goods to determine whether the UCC or South Carolina common law applies in this case. Where a contract is for the mixed sale of goods and services, South Carolina courts apply the predominant factor test to determine whether the UCC applies. Plantation Shutter, 492 S.E.2d at 406. Factors that the court may consider in determining whether a contract is for services or the sale of goods include "(1) the language of the contract, (2) the nature of the business of the supplier, and (3) the intrinsic worth of the materials involved." Coakley & Williams, Inc. v. Shatterproof Glass Corp., 706 F.2d 456, 460 (4th Cir. 1983).

Contracts which contain language primarily associated with the sale of goods, such as "buyer," "seller," "terms of sale," "customer," and "sales representative," are evidence that a contract is for the sale of goods. Plantation Shutter, 492 S.E.2d at 406. However, the court should consider the terminology in the context of the contract as a whole, rather than narrowly focusing on individual words. See id. Additionally, the court may consider whether the contract was for a fixed price, the time and detail used to describe the goods and services to be

6

provided, and the variety of services to be offered in the contract. See Kline Iron & Steel Co. v. Gray Commc'ns Consultants, Inc., 715 F. Supp. 135, 139-40 (D.S.C. 1989).

    In the instant case, the contract is predominately for construction services. The contract does not use terms such as sale, buyer, or seller, but instead uses "project," "construction," "client," and "installation" to describe the work to be done. (Inner Quest Mot. Summ. J. Ex. 2, (Contract), ECF No. 102-2.) Similarly, the contract provides only a summary list of materials to be provided, while providing in-depth descriptions of the services offered and provided. (Id. Ex. 2 (Contract), ECF No. 102-2.) Additionally, while the contract contains a single price, the price is listed as an estimate and provides for possible adjustments based upon the cost of obtaining necessary parts for the swing. (Id. Ex. 2 (Contract 3), ECF No. 102-2.) As a result, the terms of the contract reveal that the primary purpose of the contract was for construction services, rather than the sale of goods.

    This finding is also supported by the nature of Inner Quest's business. Inner Quest's corporate representative stated that Inner Quest has two divisions: "[o]ne is responsible for design, installation, training [and] inspection . . . services vended to owners and operators of challenge courses," and "the other division is a programming division where we market and operate adventure-based challenge courses . . . on contract for schools and other businesses . . . ." (Young Life Reply Ex. 1 (Smith Dep. 3-4), ECF No. 105-1.) By its own admission, Inner Quest's primary business focus is to provide services related to the design, construction, and operation of challenge courses, rather than to sell equipment.

    Lastly, the intrinsic value of the materials does not demonstrate that the contract is for the sale of goods. Both parties submit conflicting figures about the value of materials. Young

Life argues that the cost of the swing's materials is no more than $12,000.00 of the approximately $36,000.00 total price. (Young Life Reply 8, ECF No. 105). In contrast, Inner Quest argues that an additional $11,900.00 in costs should be factored in to account for the cost of the support poles and swing bar which support the swing. (Inner Quest Reply 4, ECF No. 109.) However, the cost of the support poles is composed of "both pole cost and installation." (Inner Quest Mot. Summ. J. Ex. 2 (Contract 3), ECF No. 102-2.) Because Inner Quest has not provided any further breakdown of the component and labor costs for the support poles and swing bar, the court can only speculate as to the intrinsic value of these components. Based on the foregoing, the contract in dispute is primarily for a services contract with the incidental sale of goods necessary only for the performance of those services. See Ranger Constr. Co. v. Dixie Floor Co., 433 F. Supp. 442, 445 (D.S.C. 1977) (finding that a hybrid contract for services and the sale of goods was primarily for services on summary judgment). As a result, the UCC is not applicable to this case.

   Therefore, under South Carolina common law choice of law rules, North Carolina law applies in determining whether the indemnity clause is valid because it is undisputed that the contract was entered into in North Carolina. Livingston, 180 S.E. at 345; see also Witt, 860 F. Supp. at 300. However, Inner Quest argues that, even if North Carolina law would normally apply, the application of North Carolina's law barring contractual indemnity violates South Carolina's public policy. (Inner Quest Mot. Summ. J. Ex. 1 (Mem. Supp. Mot. Summ. J. 11), ECF No. 102-1.) Inner Quest argues that the North Carolina statute violates South Carolina public policy for three reasons: (1) it conflicts with the state's public policy favoring parties' freedom to contract; (2) it conflicts with a South Carolina statute addressing the same issue; and

(3) the North Carolina statute "was enacted for the benefit of property owners and others using property in North Carolina." (Inner Quest Mem. Supp. Mot. Summ. J. 11, ECF No. 102-1.)

South Carolina courts will not apply a foreign state's law when it is against the "good morals or natural justice or that for some other such reason the enforcement of it would be prejudicial to the general interests of [South Carolina] citizens." Rauton v. Pullman Co., 191 S.E. 416, 422 (S.C. 1937); see also Dawkins v. State, 412 S.E.2d 407, 408 (S.C. 1991). In determining whether another state's law should be applied, "the fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other." Dawkins, 412 S.E.2d at 408. The South Carolina Supreme Court has not ruled on whether a limitation of parties' right to contract for indemnity violates the public policy of South Carolina. Therefore, the court "must . . . endeavor to decide the issue in the way it believes the South Carolina Supreme Court would decide it." Hatfield v. Palles, 537 F.2d 1245, 1248 (4th Cir. 1976).

The South Carolina case law finding violations of public policy pertain to "prohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquors . . . ," Rauton, 191 S.E. at 422, and interspousal immunity, Boone v. Boone, 546 S.E.2d 191, 194 (S.C. 2001). In contrast, the South Carolina Court of Appeals has found that it does not violate South Carolina's public policy to apply a statute of repose shorter than South Carolina's because South Carolina does not have a strong public policy regarding the length of a statute of repose. Nash v. Tindall Corp., 650 S.E.2d 81, 84 (S.C. Ct. App. 2007). Similarly, this court has previously found that it does not violate South Carolina's public policy to apply a foreign state's law which does not recognize an action for breach of contract accompanied by a fraudulent act even though

this action is available in South Carolina. Higdon v. Nestle Purina Petcare Co., C.A. No. 8:143737-HMH, 2014 WL 12613271, at *2-3 (D.S.C. Oct. 28, 2014) (unpublished); see also Dawkins, 412 S.E.2d at 408 ("The 'good morals or natural justice' of [South Carolina] are not violated when foreign law is applied to preclude a tort action for money damages . . . even if recovery may be had upon application of South Carolina law.").

In the instant case, the court finds that applying North Carolina law does not violate South Carolina's public policy. Although South Carolina has expressed a public policy in support of parties' freedom to contract, the right is not unlimited. See Huchaby v. Confederate Motor Speedway, Inc., 281 S.E.2d 223, 224 (1981); Ashley II of Charleston, L.L.C. v. PCS Nitrogen, Inc., 763 S.E.2d 19, 21-22 (2014). In particular, S.C. Code Ann. § 32-2-10, which Inner Quest argues should apply, limits parties' right to contract for indemnity to circumstances in which the party seeking indemnity is not solely negligent. As a result, the court finds that it does not offend South Carolina's public policy to apply a North Carolina law which is more restrictive than South Carolina's own statute. Cf. Nash, 650 S.E.2d 81, 84 ("Public policy is not violated by the two year difference in South Carolina and North Carolina's statutes of repose.") Based on the foregoing, North Carolina law applies to the question of validity of the indemnity clause.

North Carolina law states that any agreement which "purport[s] to indemnify or hold harmless the promisee . . . against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee, . . . is against public policy and is void and unenforceable." N.C. Gen. Stat. § 22B-1. It is undisputed that Inner Quest's indemnity clause in the contract seeks to provide

10

indemnity for bodily injury. Therefore, the clause is void and unenforceable pursuant to § 22B-1. As a result, Young Life's motion for summary judgment is granted as to Inner Quest's contractual indemnity claim.

### C. Equitable Indemnity

Young Life and Inner Quest have moved for summary judgment on Inner Quest's equitable indemnity claim. Young Life argues that Inner Quest does not have a right to equitable indemnity because a special relationship does not exist between Inner Quest and Young Life. (Young Life Mem. Supp. Mot. Summ. J. 18-20, ECF No. 100-1.) Young Life argues that this claim fails because, even if it is negligent, it's negligence was not directed at Inner Quest. (Id. at 19-21, ECF No. 100-1.)

In contrast, Inner Quest argues that a special relationship exists based upon its contract with Young Life for the construction of the swing. (Inner Quest Mem. Supp. Mot. Summ. J. 14-16, ECF No. 102-1.) Further, Inner Quest argues Young Life has misconstrued the requirement that negligence be "directed at" the non-faulting party and that Plaintiff's claims directed at Inner Quest for Young Life's negligence meet this requirement. (Id., ECF No. 102-1.) As a result, Inner Quest argues that it is entitled to equitable indemnity. (Id., ECF No. 102-1.)

Inner Quest and Young Life agree that South Carolina law governs Inner Quest's request for equitable indemnity.[1] (Id. at 14, ECF No. 102-1; Young Life Mem. Supp. Mot. Summ.

---

[1] South Carolina's choice of law rules apply the law of the place of injury for tort law substantive claims. Boone, 546 S.E.2d at 193. For remedial claims, South Carolina choice of law rules apply the law of the forum. Rauton, 191 S.E. at 419. In the instant case, Inner Quest's equitable indemnity claim arises out of Plaintiff's injuries, which occurred in South Carolina, and the case is pending in a South Carolina forum. Therefore, South Carolina law governs Inner

J. 18, ECF No. 100-1.)  Under South Carolina law, "[a]n equitable indemnity claim may arise when a third party . . . makes a claim against the indemnity plaintiff . . . for damages the third party sustained as a result of another party's tortious conduct."  Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. Clear View Const., LLC, 776 S.E.2d 426, 431 (S.C. Ct. App. 2015).

Whether a right to equitable indemnity exists depends on the relationship between the party seeking indemnity and the party who caused the third-parties' damages.  Id. (citing Stuck v. Pioneer Logging Mach., Inc., 301 S.E.2d 552, 553 (S.C. 1983)).  "Under South Carolina law, there can be no indemnity among mere joint tortfeasors.  Parties that have no legal relation to one another and who owe the same duty of care to the injured party share a common liability and are joint tortfeasors without a right of indemnity between them."  Scott by McClure v. Fruehauf Corp., 396 S.E.2d 354, 357-58 (S.C. 1990) (internal citations omitted).  A party may recover for equitable indemnity in cases of imputed fault or if a special relationship exists between the parties.  Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp., 518 S.E.2d 301, 305 (S.C. Ct. App. 1999).  "A sufficient relationship exists when the at-fault party's negligence or breach of contract is *directed at the non-faulting party* and the non-faulting party incurs attorney fees and costs in defending itself against the other's conduct."  Winnsboro v. Wiedeman-Singleton, Inc., 414 S.E.2d 118, 121 (S.C. 1992) (emphasis added).

South Carolina courts have found that a contractor/subcontractor relationship; purchaser/seller of a defective automobile; and homeowner/contractor are examples of situations where a special relationship exists.  Toomer v. Northfolk S. Ry. Co., 544 S.E.2d 634, 637 n.13 (S.C. Ct. App. 2001) (citing First Gen. Servs. v. Miller, 445 S.E.2d 446, 448 (S.C.

---

Quest's equitable indemnity claim.

1994); Stuck, 310 S.E.2d at 553; Addy v. Bolton, 183 S.E.2d 708, 710 (S.C. 1971); Griffin v. Van Norman, 397 S.E.2d 378, 382 (S.C. Ct. App. 1990)). However, where there is no prior-existing relationship or the relationship is attenuated, equitable indemnity is not available. See Rock Hill Tel. Co. v. Globe Commc'ns, Inc., 611 S.E.2d 235, 237 & nn.2-3 (S.C. 2005); Toomer, 544 S.E.2d at 635-37.

In the instant case, Young Life's fault, if any, is not imputed to Inner Quest. The complaint alleges that Inner Quest was negligent in designing the swing and failing to warn Young Life about the danger of the swing. (2d Am. Compl. ¶ 39, ECF No. 54.) As a result, the Plaintiff seeks damages for Inner Quest's own wrongful conduct, rather than Young Life's imputed fault.

Similarly, a special relationship does not exist between Young Life and Inner Quest. While Young Life contracted with Inner Quest for the construction of the swing, Inner Quest has not alleged that Young Life breached the contract with Inner Quest, nor was its negligence, if any, directed at Inner Quest. Instead, Young Life's negligence, if any, was directed at the Plaintiff. Although Inner Quest argues the fact that Inner Quest and Young Life entered into a contract for the swing's construction is sufficient to create a special relationship, it's assertion is not supported by the existing case law. Instead, courts interpreting South Carolina's law have consistently required that the at-fault party's wrongful acts flow through the non-faulting party to harm a third party. See Toomer, 544 S.E.2d at 637 n.13. Because Young Life's negligence did not flow through Inner Quest, no special relationship exists to support Inner Quest's claim for equitable indemnity. As a result, Young Life's motion for summary judgment is granted as to Inner Quest's equitable indemnity claim.

It is therefore

**ORDERED** that Young Life's motion for summary judgment, docket number 100, is granted. It is further

**ORDERED** that Inner Quest's motion for summary judgment, docket number 102, is denied.

**IT IS SO ORDERED.**

                                              s/Henry M. Herlong, Jr.
                                              Senior United States District Judge

Greenville, South Carolina
February 17, 2017