IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| PHILLIP WADE GRIMES, Personal Representative of the Estate of O.P.G., deceased,<br><br>        Plaintiff,<br><br>v.<br><br>YOUNG LIFE, INC.; INNER QUEST, INC.; and ADVENTURE EXPERIENCES, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 8:16-cv-01410-HMH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## YOUNG LIFE, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ENFORCEMENT OF SOUTH CAROLINA'S CHARITABLE IMMUNITY STATUTE

NOW COMES defendant Young Life, Inc. ("Young Life"), by and through counsel, and submits this reply in support of its motion for partial summary judgment.

### INTRODUCTION

In response to Young Life's motion for partial summary judgment, plaintiff does not attempt to argue—because he cannot—that punitive damages are recoverable under the Charitable Immunity Statute. Instead, plaintiff argues that the Court should simply refuse to apply the statute. In urging the Court to disregard South Carolina law, plaintiff advances three untenable arguments that each lack factual and legal support.

First, plaintiff argues that the Charitable Immunity Statute should not apply because Young Life's employees were grossly negligent and reckless. Even if conduct imputed to Young Life rose to the level of recklessness or gross negligence—which it did not—the plain language of the Charitable Immunity Statute and cases applying the statute confirm that Young Life's

charitable immunity remains intact. In fact, while preserving charitable immunity as to Young Life, the statute explicitly sets forth the procedure by which plaintiff could have pursued further claims for gross negligence and recklessness directly against Young Life employees if plaintiff had chosen to seek additional damages. Plaintiff, however, decided not to pursue any such claims against Young Life's employees. As such, plaintiff is precluded from seeking damages against Young Life or its employees in an amount greater than what is allowed under the Charitable Immunity Statute.

Second, plaintiff argues that the Court should refuse to apply the Charitable Immunity Statute because operation of the swing did not serve a charitable purpose. This argument is belied by the uncontroverted record and plaintiff's own recitation of the evidence in his response. Moreover, by its plain language, the Charitable Immunity Statute applies to any act of an employee of a charitable organization, when the employee acted within the scope of her employment. Plaintiff did not and cannot contest the fact that Young Life meets the definition of a charitable organization, and plaintiff did not and cannot contest the fact that the alleged negligence occurred while Anna Fischer was acting within the scope of her employment. Thus, the Charitable Immunity Statute unquestionably applies.

Third, plaintiff argues that the Court should ignore South Carolina law simply because plaintiff's complaint contained a strict liability cause of action, which alleged that operation of the swing was an ultrahazardous activity. The Court does not accept a non-movant's legal conclusions as true in assessing a motion for summary judgment, and plaintiff did not attempt to support this legal conclusion in his response, nor could he. However, even if plaintiff could have shown that operation of the swing was an ultrahazardous activity, there is no authority holding that such an activity nullifies the Charitable Immunity Statute. As such, there is no reasonable

dispute that the Charitable Immunity Statute applies to plaintiff's claims against Young Life and, therefore, that plaintiff's punitive damage claim cannot survive summary judgment.

Plaintiff further argues that, pursuant to the Charitable Immunity Statute, he may recover up to $600,000 from Young Life rather than the per-plaintiff cap of $300,000. Plaintiff, however, fails to support this argument with any persuasive authority and completely fails to refute the multitude of reasons discussed in Young Life's Memorandum of Law showing why the $300,000 cap must apply. Thus, as explained in Young Life's Memorandum of Law and as further discussed herein, plaintiff's recoverable damages against Young Life are capped at $300,000.

## ARGUMENT

**I.     Plaintiff's Attempt To Portray Young Life's Conduct As Reckless And Grossly Negligent Is Inconsequential To The Application Of The Charitable Immunity Statute.**

In an effort to avoid summary judgment, plaintiff spends a substantial portion of his response arguing that the Charitable Immunity Statute should not apply because Young Life's employees were grossly negligent and reckless. Looking past plaintiff's gross mischaracterization of the evidence, plaintiff's argument is wholly misplaced.[1]  Even if

---

[1] In an effort to paint Young Life's conduct as reckless and grossly negligent, plaintiff falsely characterizes evidence. As discussed above, the mischaracterizations have no bearing on the application of the Charitable Immunity Statute. Nevertheless, the Court should be aware of plaintiff's more blatant mischaracterizations. Plaintiff alleges Young Life "intentionally deprived riders, such as Olivia Grimes, of information and training regarding the safety aspects of Freebird." Pl. Resp. at 5 (ECF No. 119). This is not an accurate characterization of Ms. Fischer's testimony. *See* Deposition of Anna Fischer at 50 (ECF No. 119-2). There is no evidence that Young Life intentionally deprived riders of safety information. Moreover, despite plaintiff's suggestion that a jury could conclude Young Life "was aware of the undue risk [of] death or serious harm" (Pl. Resp. at 14), the uncontroverted evidence shows that Young Life did everything it reasonably could to ensure the safety of riders. Def. Memo. of Law at 4–9 (ECF No. 113-1). Plaintiff's own expert conceded that Young Life did "its level best to try to promote safe operations." Deposition of Edward Pribonic ("Pribonic Depo.") at 203, attached in relevant

3

plaintiff's invented issues of fact are legitimate—which they are not—the language of the Charitable Immunity Statute shows that Young Life's partial immunity remains intact.

The language of the statute does not limit its protection to simple negligence. Instead, the Charitable Immunity Statute applies and provides partial immunity for any "tortious act[s]" of an employee of a charitable organization. S.C. Code Ann. § 33-56-180(A). In the event a plaintiff believes that an employee of the charitable organization acted in a reckless or grossly negligent manner, the Charitable Immunity Statute provides a procedure by which a plaintiff can seek damages in excess of the charitable limitation. *Id.* In such an instance, the plaintiff can recover additional damages directly from the employee, but not the organization. To recover damages from the employee of the charitable organization, the plaintiff must properly join the employee as a defendant, and the trier of fact must make a specific finding that the individual employee defendant was grossly negligent or reckless. *Id.*

---

part as Ex. A. Plaintiff also alleges that Ms. Fischer's conduct was "beyond the type of foreseeable misuse" of the Freebird, and, therefore, Ms. Fischer was grossly negligent. Pl. Resp. at 18. This contention is belied by both of plaintiff's own experts. *See* Report of Edward Pribonic ("Pribonic Rep.") at 9 (ECF No. 113-12) ("[F]ailure to ensure a proper connection . . . was a foreseeable misuse of Freebird."); Pribonic Depo. at 218 (same); Report of William Avery ("Avery Rep.) at 6 (Doc. No. 113-11) (Failure to attach the carabiner was a "foreseeable 'misuse' of the product."). *See also*, Pribonic Depo. at 218 ("Q: You don't suggest in any way that Anna Fischer was being reckless or uncaring or not trying her best. Do you?; A: No."). Finally, plaintiff distorts the evidence to argue that "[t]here is substantial confusion" regarding whether Ms. Fischer and other Young Life employees were trained to implement a sit/hang test. Pl. Res. at 14–16. It is undisputed that operators of the Freebird, including Ms. Fischer, were trained on the sit/hang test. Deposition of Greg Carlton at 23–25, attached in relevant part as Ex. B; Deposition of Brian Johnson at 51–55, attached in relevant part as Ex. C. For unknown reasons, plaintiff's counsel did not ask Ms. Fischer during deposition whether she was trained on the sit/hang test. However, the testimony of MacKenzie Mizell, who was riding on the swing with Ms. Grimes at the time of the accident, confirms that Ms. Fischer required riders to undergo the sit/hang test before the swing was operated. Deposition of MacKenzie Mizell at 22–23, attached in relevant part as Ex. D. (The finalized transcript of Ms. Mizell's deposition is not yet available. Ex. D is the court reporter's draft transcript.)

In *James v. Lister*, 500 S.E.2d 198 (S.C. Ct. App. 1998), the Court of Appeals succinctly summarized the procedure by which a plaintiff may pursue damages above the charitable cap against an individual defendant:

> Although charitable status is not a jury issue, the invocation of this protection triggers alternative remedies for the injured plaintiff. [The Charitable Immunity Statute] provides a mechanism for seeking damages in excess of the charitable limitation, through an action against a charitable organization's employees. In such instances, the statute specifically requires joinder of the employee as a party, and a special finding by the jury that the employee was proved guilty of gross negligence as a proximate cause of the injury.

*Id*. at 201.

In the present case, despite filing three different complaints, plaintiff never attempted to join any Young Life employee as an individual defendant. *See* Compl. (ECF No. 2), Amended Compl. (ECF No. 54) and Second Amended Compl. (ECF No. 82). Moreover, plaintiff's deadline to amend pleadings and join additional parties has long since passed. Amended Conference and Scheduling Order (ECF No. 71). As such, plaintiff's recoverable damages against Young Life are capped by the Charitable Immunity Statute, and plaintiff cannot expand such damages by asserting that Young Life's employees acted in a reckless and grossly negligent manner.

Despite plaintiff's representation that he "is not aware of any South Carolina decisions considering whether the Charitable Immunity Statute shields charitable organizations for liability based on acts of recklessness or gross negligence," two decisions plaintiff actually cited in his response confirm that the Charitable Immunity Statute applies even when a plaintiff alleges reckless or grossly negligent conduct. In *Doe v. American Red Cross Blood Services, S.C. Region*, 377 S.E.2d 323, 326-28 (S.C. 1989), the Supreme Court of South Carolina found that application of the Charitable Immunity Statute was constitutional in a lawsuit where the plaintiff

5

alleged employees of the charitable organization were reckless, wanton and grossly negligent. In *Smith ex rel. Estate of Smith v. Church Mut. Ins. Co.*, 375 F. Supp. 2d 451, 455 (D.S.C. 2005) (J. Herlong), the plaintiffs alleged an employee of a charitable organization was reckless and grossly negligent. This Court held that damages were capped by the Charitable Immunity Statute unless the individual employee was "joined properly as a party defendant and proven to have acted in a reckless, willful, or grossly negligent manner as required under 33-56-180(A)." *Id.*

Moreover, plaintiff does not, because he cannot, contest the fact that the Charitable Immunity Statute precludes recovery of punitive damages against charitable organizations. It is absurd for plaintiff to argue that allegations of gross negligence or recklessness preclude application of the Charitable Immunity Statute when it is uncontroverted that the statute applies and caps damages in instances when alleged conduct rises to the level that normally would justify the imposition of punitive damages.

## II.    Operation Of The Freebird Was Unquestionably Related To A Charitable Purpose.

It is undisputed that Young Life is a charitable organization as defined by the Charitable Immunity Statute, and it is also undisputed that Ms. Fischer was acting in the scope of her employment at the time of the accident. Def. Memo. of Law at 11–12, 17 n. 11. On these facts alone, the Charitable Immunity Statute must apply to plaintiff's claims against Young Life. *Id.*[2]

---

[2] Plaintiff's reliance on *Eisherhardt v. State Agr. & Mech. Soc. of S.C.*, 111 S.E.2d 568 (S.C. 1959), to argue otherwise is misplaced. In *Eisherhardt*, the South Carolina Supreme Court held that under the common law charitable immunity doctrine, the determination of whether an organization qualified as a charity and the determination of whether the acts complained of garnered common law charitable immunity were to be considered on a case-by-case basis. However, as plaintiff acknowledges in his response, common law charitable immunity was abolished in South Carolina and replaced by the Charitable Immunity Statute. Pl. Resp. at 8. Under the statute, charitable immunity applies in instances, such as the present case, when (i) the organization is tax exempt pursuant to 26 U.S.C. 501(c)(3) or 501(d), and (ii) the act complained of occurred within the scope of an employee's employment. S.C. Code Ann. §§ 33-56-170, 33-56-180. As such, *Eisherhardt* is wholly inapplicable to the case before the Court.

Despite the clear applicability of charitable immunity under a plain reading of the statute, plaintiff encourages the Court to disregard the statutory language and to evaluate separately whether Young Life's operation of the swing served a charitable purpose. Further, plaintiff mischaracterizes the record in an attempt to show that the Freebird did not advance a charitable purpose. As with the mischaracterizations discussed above, plaintiff's mischaracterization of the Freebird's charitable purpose is completely inconsequential to the application of the Charitable Immunity Statute. Nevertheless, it bears repeating that Young Life has a well-established history of using challenge course activities to further Young Life's charitable purpose of bringing adolescents closer to Jesus Christ.

The undisputed evidence in this case shows that Young Life sincerely believes that the challenge course experiences shared between campers and their Young Life leaders help bridge gaps between them, help leaders "win the right to be heard," stretch campers' boundaries and comfort zones, and allow kids to do things they thought they could never do. Def. Memo. of Law at 3. It is further undisputed that Young Life believes the challenge course activities provide multiple object lessons for leaders to use with campers in the presentation of the gospel such as "work[ing] as a metaphor for faith" by "creat[ing] a sense of trust on the part of the rider," which ultimately "create[s] trust in God." *Id*. Indeed, plaintiff expressly acknowledges in his response that Young Life's "end goal [in operating the Freebird] was to serve as a metaphor for faith by encouraging riders to develop trust in the ride, its operators . . . and ultimately, trust in God." Pl. Resp. at 5.[3]

---

[3] Plaintiff admits in his complaint that Young Life "offers Christian-based activities for young people throughout the world . . . includ[ing] youth camps such as Carolina Point." Second Amended Compl. at ¶ 9.

7

Strangely, despite this admission, plaintiff also alleges that "operation of the Freebird is so far removed from Young Life's charitable purpose" that the Charitable Immunity Statute should not apply. Plaintiff's counsel seemingly believes that their own subjective mischaracterization of the swing's purpose should invalidate the long-standing charitable principles of the actual charity.[4] However, counsel's subjective belief does not undermine the sincere religious beliefs of Young Life. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972) (holding, in context of First Amendment, that state's subjective opinion regarding necessity of high school education did not negate religious group's sincere religious conviction against such compulsory education).

In short, even if the plain language of the Charitable Immunity Statute is ignored as plaintiff advocates, plaintiff still cannot dispute Young Life's genuine belief that operation of the Freebird furthered Young Life's charitable religious mission.

**III.    Plaintiff Cannot Show That Operation Of The Freebird Was Ultrahazardous And, In Any Event, An Ultrahazardous Activity Does Not Provide An Exception To The Charitable Immunity Statute**

Plaintiff argues that the Court should refuse to apply the Charitable Immunity Statute because operation of the swing was an ultrahazardous activity for which Young Life is strictly liable. Plaintiff does not provide any support for his conclusion that the swing was an ultrahazardous activity. Instead, plaintiff merely alleges that because Young Life did not move for summary judgment on plaintiff's strict liability claim, "the Court must accept those allegations as true for purposes of this motion." Pl. Resp. at 12.

---

[4] While plaintiff characterizes the Freebird as an "amusement ride," the uncontroverted evidence shows that Young Life contracted with Inner Quest to construct a challenge course activity and that Young Life hired Adventure Experiences for its expertise in training operators of challenge course activities. *See* Def. Memo. of Law at 3–7. Plaintiff's expert, William Avery, conceded in deposition that the Freebird was a challenge course activity. (Mr. Avery was deposed on March 1, 2017, and his deposition transcript is not yet available).

8

This is an incorrect statement of law. "While the Court is required to accept all of the factual allegations in [plaintiff's] verified Complaint as true for purposes of summary judgment to the extent they are based on personal knowledge of the [plaintiff] . . . the Court is not required to accept as true legal generalities or conclusions [such as plaintiff's legal conclusion that operation of the swing was ultrahazardous] unsupported by any evidence." *Corey v. Reich*, No. CIV. A. 0:02-2801-12, 2004 WL 3090234, at *10 (D.S.C. Mar. 9, 2004) (internal citation omitted), *aff'd*, 103 F. App'x 753 (4th Cir. 2004).[5] Here, plaintiff's complaint was not verified, the assertion that the Freebrid was ultrahazardous is not based on any personal knowledge, and the ultrahazardous assertion is a legal conclusion rather than a factual allegation.

Plaintiff's conclusory ultrahazardous assertion is also unsupported by any evidence. In fact, the conclusion is actually contradicted by plaintiff's own experts. Avery Rep. at 6 (concluding that the accident was "preventable" by implementing "reasonable operating procedures"); Pribonic Rep. at 10 ("[R]easonable modifications to the operations procedures which would have, more likely than not, prevented Olivia Grimes' death were feasible."). *See also, Kuykendall v. Young Life,* No. CIV.A. 7:05CV00581, 2006 WL 3246254, at *2 n. 3 (W.D. Va. Nov. 7, 2006) (noting that a challenge course activity at a Young Life camp was not ultrahazardous because "the hallmark of an ultra-hazardous activity is the inability to eliminate the risk through the exercise of reasonable care" and "the heart of [plaintiff's] claim is the assertion that Young Life *could* have eliminated the risk to plaintiff through the exercise of reasonable care.") (emphasis in original) (internal quotations and citation omitted), *aff'd,* 261 F. App'x 480 (4th Cir. 2008).[6]

---

[5] The unpublished *Corey* opinion is attached as Ex. E.

[6] The unpublished *Kuykendall* opinion is attached as Ex. F.

In addition to the ultrahazardous allegation lacking factual support, it also lacks legal support. South Carolina confines the strict liability doctrine to a small number of ultrahazardous activities, such as blasting. *Shockley v. Hoechst Celanese Corp.*, Nos. 92-1521, 92-1543, 1993 WL 241179, *5 (4h Cir. June 28, 1993).[7] South Carolina courts have never found any activity that is even remotely analogous to the Freebird to be ultrahazardous. Plaintiff cannot properly ask to this Court to enlarge South Carolina's definition of an ultrahazardous activity absent clear guidance from the State. *See id*.

Finally, even if plaintiff could put forth a sufficient factual and legal basis for his strict liability claim—which he has not and cannot—plaintiff has failed to identify a single opinion or other legal authority holding or implying that the Charitable Immunity Statute should be disregarded if a charitable organization is found strictly liable. No such exception to the statute exists. As discussed above, the plain language of the Charitable Immunity Statute confirms that the statute applies to any "tortious act."

**IV.    Pursuant To The Charitable Immunity Statute, Plaintiff's Recovery Against Young Life Is Limited To Three Hundred Thousand Dollars.**

    **A.    Pursuing a Survival Claim and Wrongful Death Claim Does Not Convert Plaintiff into Two Separate Persons Entitled to Separate Damages Limits Under the Charitable Immunity Statute.**

As expected, plaintiff argues that, even though his lawsuit unquestionably consists of a single plaintiff bringing claims on behalf of a single decedent, the Court should treat plaintiff as two different "persons" because he is pursuing a survival claim and a wrongful death claim. Plaintiff makes no attempt to contest the intimate overlapping relationship between survival and

---

[7] The unpublished *Shockley* opinion is attached as Ex. G.

wrongful death causes of action described in Young Life's Memorandum of Law.[8] Instead, plaintiff relies almost entirely on *Wright v. Colleton County School District*, 391 S.E.2d 564 (S.C. 1990). That opinion is inapposite to the present case.

Importantly, *Wright* did not involve overlapping survival and wrongful death claims. Instead, *Wright* involved a child who was injured on the premises of a school, but who survived. As a result of the injury, the child incurred medical expenses and the child's mother became obligated to pay the medical expenses. Pursuant to the Tort Claims Act, the child (through his mother) and the mother (individually) both asserted distinct claims against the school. The child asserted claims for his personal injuries and the mother asserted separate claims for recovery of the child's medical expenses and for the loss of services of her son. *Id*. at 566.

The court held that the because the mother possessed causes of action entirely separate from her son—reimbursement of medical expenses and lost services—her claim was subject to one cap, while the son's separate personal injury claim was subject to another cap. *Id*. at 569. The opinion in *Wright*, therefore, stands for the unremarkable proposition that when a minor is injured and his parents are left without his services but with the responsibility to pay for his medical expenses, the parents and the child may both maintain their own separate causes of

---

[8] Plaintiff does try to distinguish the *Rutland v. S.C. Department of Transp*ortation, 734 S.E.2d 142 (S.C. 2012), decision that allowed equitable reapportionment between survival and wrongful death claim settlements due to the court's recognition that both claims are brought by a single person. Bizarrely, plaintiff argues that reapportionment was only allowed in *Rutland* because there was no evidence to support a survival claim, and that "[o]bviously, if the evidence had supported an allocation of proceeds to the survival claim, there would have been no set-off available pertaining to the amounts so allocated." However, a simple reading of the *Rutland* opinion dispels plaintiff's unfounded argument. The *Rutland* court approvingly discussed and relied upon a Court of Appeals opinion (*Welch v. Epstein*, 536 S.E.2d 408 (S.C. Ct. App. 2000)) where the court equitably reapportioned survival and wrongful death settlements despite the fact that there was evidence supporting a survival claim. As such, plaintiff simply cannot contest the fact that survival and wrongful death claims are brought by the same "person" allowing for equitable reapportionment, as contrasted to distinct claims that truly belong to two different "persons," which cannot be reapportioned.

action for their distinct claims.[9] The *Wright* opinion provides no guidance on whether a decedent's estate's pursuit of overlapping survival and wrongful death causes of action allows a plaintiff to transform into two "persons" for purposes of the Charitable Immunity Statute.

Plaintiff also cites to a Tort Claims Act case where the trial court applied a separate cap for wrongful death and survival damages. *See Smalls v. S.C. Dep't of Educ.*, 538 S.E.2d 682 (S.C. Ct. App. 2000). There is no indication in the opinion that the trial court heard any arguments as to whether this was proper. It appears that the trial court merely assumed that a separate cap should apply for the two related causes of action. As plaintiff acknowledges, the appeal was unrelated to the trial court's unchallenged assumption. Thus, *Smalls* shows nothing other than the fact that a single trial court made an unchallenged and improper assumption as to how the Tort Claims Act cap should be applied.

Moreover, even if the reasoning, if any, of the *Smalls* trial court was available for review, the trial court's rationale would hold minimal value in the present case. *See King v. Order of United Commercial Travelers of Am.,* 333 U.S. 153 (1948). In *King*, the United States Supreme Court found the Fourth Circuit justified in making its own determination of how the South Carolina Supreme Court probably would rule, rather than following the rationale provided in a conflicting opinion issued by a state trial court. The court concluded, "a Court of Common Pleas does not appear to have such importance and competence within South Carolina's own judicial system that its decisions should be taken as authoritative expositions of that State's law." *Id.* at 160–61.

---

[9] When a child dies instantaneously in an accident, such as in the present case, the child's parents do not possess separately cognizable claims for loss of services or reimbursement of medical expenses. *See Tollerson v. Atl. Coast Line R. Co.*, 198 S.E. 164, 166–67 (S.C. 1938).

As illustrated by the unrefuted arguments in Young Life's Memorandum of Law, the mere fact that the plaintiff is pursuing survival and wrongful death causes of action does not change the fact that plaintiff is but one "person" under the Charitable Immunity Statute. Plaintiff has failed to credibly show otherwise. Plaintiff's recoverable damages against Young Life, therefore, are limited to $300,000.

### B.     The Beneficiaries of Olivia Grimes' Estate Are Not Separate Persons under the Charitable Immunity Statute.

As forecasted, plaintiff also argues that Olivia Grimes' father and mother should be considered two separate persons for purposes of the damages cap. However, as discussed in Young Life's opening brief, in an analogous opinion, the South Carolina Supreme Court recognized that, even when a decedent leaves multiple beneficiaries, "inherently there was only one claim" for the decedent's death. Def. Memo. of Law at 19; *Builders Transp., Inc. v. S.C. Prop. & Cas. Ins. Guar. Ass'n*, 415 S.E.2d 419, 423 (S.C. Ct. App. 1992). Plaintiff makes no attempt to distinguish the analogous holding from *Builders Transport* other than pointing out the obvious fact that the opinion does not concern the Charitable Immunity Statute.

Instead, plaintiff attempts to argue that because Mr. and Mrs. Grimes must each present and prove how they were damaged as part of plaintiff's wrongful death claim, each parent has a separate claim for purposes of the Charitable Immunity Statute. This argument is misplaced. The damages for Mr. Grimes' loss and Mrs. Grimes' loss are simply different elements of recoverable damages under the single wrongful death claim that must be presented and proven separately, just as damages for Olivia Grimes' funeral expenses and the pecuniary loss resulting from her death must be presented and proven separately. It is self-evident that each element of damages in a wrongful death claim—including funeral expenses, pecuniary loss, and each beneficiary's non-economic loss—must be separately proven and determined by the jury.

13

The fact that distinct elements of damages are proven and evaluated separately does not artificially splice the underlying wrongful death claim into multiple claims for purposes of the Charitable Immunity Statute. For example, if a single plaintiff commences a lawsuit against a charitable organization to recover lost wages, medical bills and pain and suffering damages, that plaintiff is required to separately prove each element of the claimed damages before receiving a total recovery for his claim. The fact that the claim involves distinct elements of damages certainly would not transform the single plaintiff into multiple persons for purposes of the Charitable Immunity Statute. The result is the same in the present matter. The mere fact that a wrongful death claim entitles plaintiff to different elements of recoverable damages does not show that plaintiff is multiple persons under the Charitable Immunity Statute.

Plaintiff's reliance on *Ballard v. Ballard*, 443 S.E.2d 802 (S.C. 1994), to argue otherwise is peculiar. *Ballard* actually supports the fact that Mr. and Mrs. Grimes should not be considered separate persons under the Charitable Immunity Statute. In *Ballard* a mother commenced a wrongful death lawsuit after the passing of her teenage son. The father was not part of the lawsuit and allegedly was not part of his son's life before the death. The mother settled the wrongful death claim and petitioned the court to allocate the entire settlement to her, leaving nothing to the absentee father.

Instead, the court divided the settlement equally between the mother and father, even though the father had not presented and proven any damages for his loss at trial. If the father was a separate claimant with a separate claim as plaintiff suggests, the court could have easily allocated the entire settlement to the mother and forced the father to bring his own separately cognizable claim for damages. However, this was not an option for the court because parents do not have separate and distinct claims for the wrongful death of their child.

## CONCLUSION

For the reasons explained herein and in Young Life's Memorandum of Law, Young Life respectfully requests that the Court dismiss plaintiff's punitive damage claim against Young Life and enter an order declaring that the actual damages that plaintiff may recover against Young Life are limited by the Charitable Immunity Statute to $300,000.

Respectfully submitted,

/s/ William H. Floyd, III
William H. Floyd, III (Fed. I.D. 1580)
NEXSEN PRUET, LLC
55 E. Camperdown Way, Suite 400
P.O. Box 10648 (29603-0648)
Greenville, SC 29601
Ph: (800) 825-6757
Fax: (803) 253-8277
WFloyd@nexsenpruet.com

-and-

Jack M. Strauch
NC Bar No. 22341
*Admitted Pro Hac Vice*
154 Dornach Way
Bermuda Run, NC 27006
Ph: (336) 836-1061
Fax: (336) 725-8867
jstrauch@sgandm.com

*Attorneys for Young Life, Inc.*

March 9, 2017
Greenville, South Carolina