IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON / GREENWOOD DIVISION

| | | |
|---|---|---|
| PHILIP WADE GRIMES, PERSONAL REPRESENTATIVE OF THE ESTATE OF O.G., | ) ) ) ) ) | **MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, INNER QUEST, INC.** |
| PLAINTIFF, | ) ) | |
| VS. | ) ) | CASE NO. 8:16-CV-1410-HMH |
| YOUNG LIFE, INC, INNER QUEST, INC., AND ADVENTURE EXPERIENCES, INC. | ) ) ) ) ) ) | |
| DEFENDANTS | ) | |

## INTRODUCTION

The only issue presented in this case is whether the use of a single point of attachment for

a Three-Person Giant Swing is defective and unreasonably dangerous to the user. Such a design

is reasonably safe as a matter of law because it is consistent with the industry standard, complied

with applicable safety standards, and has a service-proven track record of safe operation totaling

hundreds of thousands, if not millions, of swing cycles without incident. As will be discussed

hereinafter, Plaintiff has failed to present any admissible evidence establishing the design of the

swing is defective or unreasonably dangerous or that the alternative designs his experts have

proffered are any safer than a single point of attachment. Moreover, the sole proximate cause of

Grimes' death, and Plaintiff's damages, was operator error on the part of Young Life. For these

and other reasons as set forth hereinafter, Defendant Inner Quest, Inc. ("Inner Quest") is entitled

to judgment as a matter of law in its favor on all of Plaintiff's design defect claims.

By way of additional background, this is a case brought by the father of Olivia Grimes ("Grimes") who was tragically killed on July 13, 2015 when she fell from a Three-Person Giant Swing designed, manufactured, and installed by Inner Quest at the Carolina Point Young Life camp located in Pickens County, South Carolina. The tragedy occurred because a Young Life employee, Anna Fischer, despite receiving training on the safety and operational procedures of the swing by the two co-defendants,[1] failed to properly connect Grimes' harness to the swing as she had been trained to do. Plaintiff alleges wrongful death and survival act claims against Inner Quest, under both negligence and strict liability theories of design defect and failure to warn Young Life of the risk of operating the swing with a single point of attachment. Inner Quest's denies any liability and has asserted a number of affirmative defenses.

With respect to Plaintiff's contention Inner Quest had a duty to warn Young Life, that claim also fails as a matter of law. Young Life and Adventure Experiences represent two of the most experienced companies working within the challenge course industry, and both have decades of experience working with giant swings. As such, Inner Quest was under no duty to warn these sophisticated users of the risks entailed in using the Three-Person Giant Swing. As an additional defense to any liability premised upon a duty to warn by Inner Quest, the uncontroverted evidence establishes: the Three-Person Giant Swing was operated based solely upon policies and procedures developed by Young Life and Adventure Experiences; neither Young Life nor Adventure Experiences consulted the operations manual provided to Young Life by Inner Quest or spoke with Inner Quest in developing the safety and operational procedures for the swing; all training provided to the operators of the Three-Person Giant Swing was done by Young Life and Adventure Experiences; and Inner Quest was not involved in any capacity with

---

[1] Young Life, Inc. and Adventure Experiences, Inc. have settled with Plaintiff.

that training or training materials provided to the operators of the swing at Carolina Point. As such, any action or inaction by Inner Quest with respect to operational procedures of the swing was not a proximate cause of Plaintiff's damages and this theory fails as a matter of law.

This matter is before the Court on Inner Quest's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Plaintiff cannot meet his burden of establishing the design of the Three-Person Giant Swing was done negligently or was unreasonably dangerous, or otherwise establish Inner Quest breached any duty of care owed him. Further, there is no admissible evidence establishing Grimes' death was proximately caused by any alleged negligence of Inner Quest or the unreasonably dangerous design of the Three-Person Giant Swing. Accordingly, Inner Quest is entitled to judgment in its favor as a matter of law.

## STATEMENT OF FACTS

For the purpose of this motion, the material facts of this case are undisputed. Inner Quest is a professional vendor member of the Association of Challenge Course Technology ("ACCT") (App. Ex. 1, p. 13:20; App. Ex. 4, p. 186:6–8). The professional vendor member designation connotes the company as being highly experienced and competent within the challenge course industry and with respect to ACCT standards (App. Ex. 4, pp. 185:19–186:13). Inner Quest contracted to design, manufacture, sell, and erect a Three-Person Giant Swing for Young Life at its Carolina Point Camp, which straddles the borders of South Carolina and North Carolina (App. Ex. 10). This was the fourth giant swing Inner Quest designed and sold to Young Life for use at its camps, with each being of the same design (App. Ex. 1, pp. 27:21–28:9). Once installed at Carolina Point, the Three-Person Giant Swing was named "Freebird" by Young Life (App. Ex. 1,

---

[2] Inner Quest has filed simultaneously with its Motion for Summary Judgment and this Memorandum in support thereof, two Motions in Limine to exclude Plaintiff's experts and supporting memoranda.

pp. 16:13–17:9).  Importantly, all parties agree Carolina Point is a challenge course facility (App. Ex. 3, pp. 7:13–14:25; App. Ex. 4, pp. 17:4–7; 214:15–224:17; 239:25–243:13; 245:22–249:22; App. Ex. 18; App. Ex. 19; App. Ex. 17).[3]  Young Life has been one of the leading companies, if not the leading company, involved in the challenge course industry since the 1970s (App. Ex. 18, p. 10).  Young Life operates thirty-two challenge course camps worldwide (App. Ex. 18, p. 10). A number of those camps have giant swings similar in operation to Freebird (App. Ex. 17). Young Life has such extensive knowledge and experience in the operation of challenge course elements, including giant swings, that it has designed its own policies and procedures manual entitled "Rope Training Manual" that were applicable to the operation of Freebird at Carolina Point (App. Ex. 2, pp. 65:19–66:12 and App. Ex. 11; App. Ex. 4, p. 199:3–8).  Plaintiff's expert, William Avery, acknowledges Young Life is the most experienced and knowledgeable operator of challenge courses in the United States (App. Ex. 3. P. 68:7–14).

The design of the Freebird was based upon swings previously designed and built by Inner Quest and other manufacturers for Young Life at its other camps (App. Ex. 1, pp. 19:9–14; 104:21–105:11).  In fact, the initial swing design upon which many of the later swings were modeled was designed by Young Life (App. Ex. 19, p. 4; App. Ex. 17, p. 12).  Since 2006, Inner Quest has designed and installed for Young Life at its camps three other giant swings of substantially the same design as Freebird (App. Ex. 1, pp. 27:21–28:9).  In total, Inner Quest has manufactured thirteen (13) Three-Person Giant Swings of the same or substantially similar design as Freebird.  These thirteen swings alone have undergone more than 200,000 swing cycles without any significant injury or accident (App. Ex. 17, p. 12).

---

[3] As discussed hereinafter, the South Carolina Department of Labor, Licensing, and Regulation, the entity charged with enforcement of regulations applicable to amusement parks in South Carolina, likewise determined it did not have jurisdiction over Freebird or Carolina Point because Carolina Point was not open to the public and therefore was not an amusement park.

All of the swings designed and built by Inner Quest, including Freebird and the other three giant swings for Young Life, utilize a single point of attachment between the participant and the swing (App. Ex. 1, pp. 27:21–28:9; App. Ex. 17, p. 12). The overwhelming majority of giant swings operated in the challenge course setting utilize the same single point of connection between the participant and the swing (App. Ex. 17, p. 13; App. Ex. 19, p. 5–6). Plaintiff's experts could not identify a single giant swing that was operated at a challenge course which had multiple points of attachment between participant and swing (App. Ex. 3, pp. 35:5–8, 13–16; 60:13–17; 79:7–10; 93:17–94:2; App. Ex. 4, pp. 116:17–117:5). In fact, Plaintiff's expert, William Avery, could not name a single other giant swing even outside of the challenge course setting that utilized multiple points of attachment (App. Ex. 3, pp. 35:5–8, 13–16; 60:13–17; 79:7–10, 93:17–94:2). It cannot reasonably be disputed that there have been millions of cycles of giant swings utilizing a single point of attachment, the same as utilized by Inner Quest on Freebird. Despite the millions upon millions of swing cycles, not a single witness in this case has identified an instance of an operator of a giant swing failing to connect a participant via a single point of attachment prior to Grimes' tragic accident (App. Ex. 3, p. 36:14–17; App. Ex. 4, p. 116:9–13). Despite this, Plaintiff and his experts maintain that the design of Freebird was defective and unreasonably dangerous because it relied upon the single point of attachment between Grimes and the swing (App. Ex. 15; App. Ex. 3, pp. 70:23–72:10; App. Ex. 16; App. Ex. 4, pp. 73:5–21; 163:8–12; Second Amended Complaint). This is the sole claim of design defect levied by Plaintiff and his experts against Inner Quest.

As discussed above, Inner Quest contracted with Young Life for the sole purpose of designing, manufacturing, and erecting Freebird (App. Ex. 10). Specifically excluded from that contract was the responsibility of Inner Quest to provide any instruction, training, advice, or

provide any other type of input on the safe operation of Freebird, though Inner Quest did provide Young Life with the operations manual for Freebird (App. Ex. 9; App. Ex. 2, pp. 93:10–94:5). In fact, it is undisputed Young Life did not seek any input from Inner Quest on the safe operation of Freebird (App. Ex. 3, pp. 73:11–12; 118:11–119:9; 120:9–10; App. Ex. 2, pp. 93:10–94:8; App. Ex. 6, pp. 16, 19, 39, 40–41; App. Ex. 5, pp. 40–42; App. Ex. 8, p. 49; App. Ex. 7, pp. 67–69). This was because Young Life contracted with Adventure Experiences to provide all training and certification to its operators of challenge course equipment, including giant swings, throughout the entire country (App. Ex. 18, p. 9). After Freebird was installed at Carolina Point, and prior to its operation, Adventure Experiences trained all Young Life operators, including Fischer, on the safe operation of the swing. This training consisted of 40 hours of classroom training and then site-specific training (App. Ex. 8, pp. 86–87). All of the written materials provided to Fischer and the other trainees were generated by Adventure Experiences and none came from Inner Quest (App. Ex. 7, pp. 67–69; App. Ex. 8, p. 49; App. Ex. 5, pp. 40–42; App. Ex. 2, pp. 93:10–94:5). The certified operators were never provided with Inner Quest's Operations Manual. Id. In addition to the training provided by Adventure Experiences, Young Life also provided additional training to its employees on the safe operation of Freebird (App. Ex. 2, pp. 53:25–55:6; App. Ex. 4, p. 41:6–9). Young Life itself developed a "Rope Training Manual" which provided additional instruction on the safe operation of Freebird, including two squeeze tests of the carabiner to ensure connection between carabiner and swing bar and a seat test, also ensuring the connection, prior to operation of the swing (Id.; App. Ex. 11). The uncontroverted testimony establishes that despite Adventure Experiences and Young Life providing training to Young Life employees on the safe operation of the swing, neither consulted the Inner Quest Operations Manual or worked with Inner Quest in any capacity to develop the

operational procedures for the swing (App. Ex. 7, pp. 67–69; App. Ex. 8, p. 49; App. Ex. 5, pp. 40–42; App. Ex. 2, pp. 93:10–94:5). Despite this evidence, Plaintiff and his experts allege Inner Quest is liable for failing to develop adequate safety procedures to operate Freebird and failing to warn Young Life that Freebird was unreasonably dangerous (App. Ex. 15; App. Ex. 3, pp. 70:23–72:10; App. Ex. 16; Second Amended Complaint).

It is undisputed Fischer knew as of July 13, 2015 that as the certified operator of Freebird on that date she was responsible for ensuring the single point of connection between participant and the swing bar of Freebird was secure prior to operation of the swing (App. Ex. 4, pp. 115:2–11; 144: 9–20; App. Ex. 3, pp. 38:18–39:14). Further, Fischer knew that failure to make this connection could result in serious injury or death of the participant. Id. Despite her training and this knowledge, Fischer inexplicably failed to make the critical connection via carabiner between Grimes' harness and Freebird's swing bar (App. Ex. 16; App. Ex. 4, p. 144:19–20; App. Ex. 15; App. Ex. 18; App. Ex. 17; App. Ex. 19). It is agreed by all parties and their experts that had Fischer made this connection, as she knew she was supposed to do from her training, this tragic accident would not have occurred (App. Ex. 3, pp. 41:18–42:5; 55:17–22; 109:5–10; App. Ex. 4, p. 11:10–22). In fact, Plaintiff's expert, Edward Pribonic testified that Inner Quest's design of Freebird had nothing to do with Fischer's failure to attach Grimes (App. Ex. 4, p. 180:18–22).

On July 13, 2015, Fischer failed to make the critical attachment. As Freebird reached the apex of its swing cycle, Grimes fell backwards out of the seat and fell approximately one hundred feet to her death (Second Amended Complaint). Young Life personnel, including an EMT, immediately responded to the site where Grimes fell, arriving within minutes of her fall (App. Ex. 2. 109:2–110:18). Grimes did not respond to any stimuli, was not breathing, did not have a pulse, and there is no evidence she showed any sign of consciousness after the fall. Id.

Grimes was pronounced dead at the scene (App. Ex. 12). Subsequent to the accident, the South Carolina Department of Labor, Licensing, and Regulation performed an investigation. Ultimately, however, SCLLR determined it did not have jurisdiction as Freebird and Carolina Point were not open to the public and did not qualify as an amusement park under that entity's jurisdiction. (App. Ex. 13).

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when the court determines there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). Under federal law, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1340 (4th Cir. 1992); Fed. R. Civ. P. 56(e). The United States Supreme Court has held:

> The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable juror could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'

Anderson, 477 U.S. at 252 (emphasis in original). Thus, in order to defeat summary judgment, the non-movant must set forth specific facts showing a genuine issue for trial through evidence which is admissible or reflects the availability of admissible evidence. Celotex Corp., 47 U.S. at 324.

## ARGUMENT

Plaintiff cannot sustain his burden to establish liability of Inner Quest based upon a design defect or failure to warn in relation to Freebird under either a strict liability or negligence

theory of recovery, and therefore his claims against Inner Quest fail as a matter of law. To prevail under any theory of product liability pursuant to South Carolina law, the plaintiff must establish: (1) that he was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition unreasonably dangerous to the user. Branham v. Ford Motor Co., 701 S.E.2d 5, 8 (S.C. 2010) (citing Madden v. Cox, 328 S.E.2d 108, 112 (S.C. Ct. App. 1985). The failure to present admissible evidence on any one of the three above-referenced elements, results in all claims, whether based in negligence or strict liability, failing as a matter of law. Id. Plaintiff fails to meet all three of the elements. The design of Freebird is not unreasonably dangerous in the condition that it was delivered to Carolina Point. Further, there is no dispute that a proximate cause of Plaintiff's damages, and Grimes' death, was not the design of Freebird, but instead was the sole negligence of Young Life's operator.

Plaintiff's claim for punitive damages cannot be awarded under a strict liability theory of recovery and additionally there is no admissible evidence sufficient to award punitive damages under Plaintiff's negligence theories. For all of these reasons, as will be further explained hereinafter, Inner Quest is entitled to judgment in its favor as a matter of law.

## I. <u>Design Defect</u>

### a. <u>Freebird's design was reasonably safe as a matter of law and Freebird was not in a defective condition unreasonably dangerous to the user.</u>

Plaintiff's sole allegation of design defect against Inner Quest is that the use of a single point of attachment between participant and swing is unreasonably dangerous. However, the use of a single point of attachment is reasonably safe as a matter of law. Therefore, all of Plaintiff's strict liability and negligence design defect claims fail as a matter of law.

In South Carolina, the exclusive test for determining whether a product is unreasonably dangerous is the risk-utility test. Branham, 701 S.E.2d at 14. The risk-utility test involves four factors: (1) usefulness and desirability of the product; (2) the cost involved for added safety; (3) the likelihood and potential seriousness of injury; and (4) the obviousness of danger. Id. at 13 (citing Claytor v. Gen. Motors Corp., 286 S.E.2d 129, 131 (S.C. 1982); Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321, 328 (S.C. Ct. App. 1995)). A component of the risk-utility test, however, is Plaintiff's burden to show a feasible alternative design, the adoption of which would have reduced or avoided the foreseeable harm posed by the product. Id. at 14, 16 (citing RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b) (1998)). The risk-utility test seeks to answer the "fundamental question" of whether the manufacturer's failure to adopt the reasonable alternative design championed by the plaintiff was on balance, weighing increased costs, lost utility, and lost safety by adopting the alternative design, right or wrong. Id. at 16. As summarized by the South Carolina Supreme Court in Branham:

> In sum, in a product liability design defect action, the plaintiff must present evidence of a reasonable alternative design. The plaintiff will be required to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous. This presentation of an alternative design must include consideration of the costs, safety and functionality associated with the alternative design.

Id. at 16 & n.16. The Branham Court also noted consideration must be given as to whether the plaintiff's alternative proposed design potentially increased "other safety concerns." Id. (citing Claytor, 286 S.E.2d at 132).

Against the foregoing legal authority, however, South Carolina has long recognized that any product can be made safer. A jury question is not created merely because a product can be made safer. Id. at 16. There is danger incident to the use of any product and most any product can be made more safe, such that the mere showing that Freebird could have been made "more

safe" does not establish it was in a defective condition unreasonably dangerous. See id. (citing Marchant v. Mitchell Distrib. Co., 240 S.E.2d 511, 513, 514 (S.C. 1977)).

Even assuming Freebird could have been made safer with a different design, which Inner Quest denies, the fact that it could be made safer is not the question before the Court. The relevant, and only, question to answer in determining whether Freebird was unreasonably dangerous is whether Freebird's design utilizing the single point of attachment between participant and swing, rather than Plaintiff's alternative proposed design of multiple points of attachment, was on balance right or wrong in light of the potential additional costs, lost utility, and other safety concerns attendant to using multiple points of attachment. Based upon the evidence in this case, the design of Freebird with a single point of attachment is favored under multiple factors of the risk-utility test such that the design is reasonably safe as a matter of law.

Plaintiff's experts were unable to identify even one other giant swing operated at a challenge course where there were multiple points of attachment between participant and swing. This is because the industry standard within the challenge course industry for elements such as the giant swing is to utilize a single point of connection. As explained by defense expert, Bob Ryan, this is a strategic choice made within the industry because of the potential for added confusion for operators when multiple points of attachment are utilized. Applying the risk-utility test to Plaintiff's alternative proposed design, the incorporation of multiple points of attachment is disfavored because of other safety concerns including the potential for confusion to the operator, which in turn would not make the product any safer. Moreover, as Plaintiff's experts' cannot dispute, if Fischer simply forgot to connect the single point of attachment, it is only mere speculation that she would have connected a second or additional point of attachment. Therefore, Plaintiff's alternative proposed design does not make the product any safer, and in

fact makes the product less safe.[4]  Plaintiff has failed his burden to establish the proposed alternative design meets the requirements of the risk-utility test, and therefore his strict liability and negligence design defect claims fail as a matter of law.

Additionally, for design defect cases the state of the art and industry standards have long been held to be relevant in showing the reasonableness of a given design.  See Reed v. Tiffin Motor Homes, Inc., 697 F.2d 1192, 1196 (4th Cir. 1982) (citing Raney v. Honeywell, Inc., 540 F.2d 932, 937 (8th Cir. 1976); Hoppe v. Midwest Conveyor Co., Inc., 485 F.2d 1196, 1202 (8th Cir. 1973); Welch v. Outboard Marine Corp., 481 F.2d 252, 256–257 (5th Cir. 1973)); see also Bragg, 462 S.E.2d at 329 (affirming directed verdict in favor of defendant because plaintiff's experts conceded no one in the industry utilized plaintiff's proposed alternative design).  As explained by the South Carolina Court of Appeals, "[w]hile conformity with industry practice is not conclusive of the product's safety, the cases where a member of industry will be held liable for 'failing to do what no one in his industry has ever done before' will be infrequent."  Bragg, 462 S.E.2d at 329 (citing Sexton v. Bell Helmets, Inc., 926 F.2d 331, 338 (4th Cir. 1991)).  In this instance, Inner Quest designed Freebird consistent with industry practices and standards to rely upon a single point of attachment (App. Ex. 17; App. Ex. 18; App. Ex. 19).  The industry practice and standard for the design and manufacture of giant swings is to use a single point of attachment.  Id.  Again, Plaintiff's experts could not point to another giant

---

[4] Inner Quest further notes, as discussed in its memoranda filed in support of its Motions to Exclude Plaintiff's experts, that Plaintiff's experts have not come forward with any data, testing, or evidence of any kind establishing that two points of connection are "safer" than a single point of connection.  The only evidence in the record is that there has been one accident involving a giant swing utilizing a single point of attachment and one accident involving a giant swing utilizing multiple points of attachment.  Certainly, this parity between the frequency of incidents involving the two designs does not establish multiple points of attachment are safer than one.  Absent any such "proof" that the proposed alternative design is safer, Plaintiff fails to meet his burden under Branham.

swing in the challenge course setting utilizing multiple points of attachment. Inner Quest itself

has documented hundreds of thousands of swing cycles using this exact design without a single

incident, prior to July 13, 2015, of an operator failing to make the critical connection. Moreover,

as the challenge course industry overwhelmingly utilizes the single point of attachment for giant

swings, it can be assumed there have been millions of such swing cycles. Despite these figures,

Plaintiff's experts were unable to point to even one other prior incident where a challenge course

operator failed to make the critical connection.[5] The adoption of the single point of connection

within the challenge course industry, as well as the service-proven track record of safety of that

style of connection, also establishes the design of Freebird was reasonably safe as a matter of

law.

        Where the facts and reasonable inferences therefrom can lead but to only one

conclusion—that the product was not in a defective condition unreasonably dangerous to the

user—judgment as a matter of law in favor of the manufacturer is appropriate. See Branham,

701 S.E.2d at 9 (affirming the trial court's determination as a matter of law that the seatbelt

sleeve was not in a defective condition unreasonably dangerous to the user and reversing the trial

court's failure to direct verdict in favor of manufacturer as to all design defect causes of action).

In this instance, the facts and reasonable inferences therefrom lead to only one conclusion—the

design of Freebird with a single point of attachment between participant and swing was not a

defective condition unreasonably dangerous to Grimes—and therefore, Inner Quest is entitled to

_____

[5] In fact, Plaintiff's experts could only name one prior accident involving a giant swing and
failed attachment—but in that instance, the swing was in an amusement park setting, had two
operators and two points of attachment, yet still the accident occurred. See App. Ex. 14. This
further undercuts any suggestion that multiple points of attachment would have made Freebird
safer. As further discussed in Inner Quest's memoranda in support of its Motions to Exclude
Plaintiff's experts, the failure to establish via testing, data, or otherwise that the alternative
design is safer renders Plaintiff's experts' opinions unreliable and they should be excluded under
Daubert and its progeny, including Nease v. Ford Motor Co., 848 F.3d 219 (4th Cir. 2017).

judgment in its favor as a matter of law with respect to all of Plaintiff's design defect causes of action.

      b.  <u>The design of Freebird was not a proximate cause of Plaintiff's damages.</u>

Plaintiff likewise fails to meet his burden of establishing Freebird was a proximate cause of his damages, and his design defect claims therefore fail as a matter of law. This burden requires Plaintiff to present proof, which "must be sufficient to show not only that the product was defective, but that the defect was the direct and efficient cause of plaintiff's injury." <u>Livingston v. Noland Corp.</u>, 362 S.E.2d 16, 18 (S.C. 1987). In products liability cases, where the sole proximate cause is operator or human error, the manufacturer may not be held liable. <u>See</u> <u>e.g.</u> <u>French v. Grove Mfg. Co.</u>, 656 F.2d 295, 300 (8th Cir. 1981) (affirming instruction to the jury in products liability action against crane manufacturer that that it must find in favor of the manufacturer if it determines that human error of the crane operator was the sole proximate cause of the accident); <u>In re</u> <u>Toyota Motor Corp. Unintended Acceleration Mktg.,</u> <u>Sales Practices   Prods. Liab. Litig.</u>, 978 F. Supp.2d 1053, 1099–1102 (C.D. Ca. 2013) (permitting submission of products liability claim to jury where there was evidence, if believed by jury, that would show the accident was not caused by human error but was caused by defective product).

All parties agree Freebird could be operated safely if operated consistent with the training provided by Adventure Experiences and Young Life. In this incident, however, Fischer did not operate Freebird on July 13, 2015 as she had been trained to do. It is undisputed she knew how to connect Grimes' harness to the swing bar and knew the importance of connecting Grimes' harness to the swing bar, but simply failed to do so. Every party and their experts agree that had Fischer connected Grimes' harness to the swing bar, this tragic accident would not have

occurred.  In fact, Plaintiff's expert, Edward Pribonic, agrees "Inner Quest's design had nothing to do with Ms. Fischer's omission to hook up the single carabiner."  (App. Ex. 4, p. 180:18–22).

The sole proximate cause of Grimes' death, and Plaintiff's damages, is the negligence of Young Life.  Freebird was not defectively designed, unreasonably dangerous to the user.  In contrast, the same design that is challenged in this case—the single point of attachment—had been used safely for hundreds of thousands, if not millions, of swing cycles without any incident.  All parties and their experts acknowledge Freebird could be safely operated as designed with the single point of attachment.  Here, the uncontroverted evidence shows that the sole proximate cause of the accident was human error, not defective design, and therefore, both Plaintiff's strict liability and negligence design defect claims fail as a matter of law. See Branham v. Ford Motor Co., 701 S.E.2d at 8 (citation omitted).

## II. <u>Negligent Failure to Warn Theories.</u>

Plaintiff maintains Inner Quest was negligent in failing to develop adequate safety procedures to operate Freebird to include a two-person double check and failing to warn Young Life Freebird was unreasonably dangerous because it relied upon only a single point of attachment (Counts VI–X of Second Amended Complaint).  Both of these negligence theories fail as a matter of law.

### a. <u>Inner Quest may not be held liable for the operational procedures of Freebird.</u>

Inner Quest may not be held liable for any alleged deficiencies in the operational procedures of Freebird.  The uncontroverted evidence shows the operation of Freebird at Carolina Point was based solely upon the training provided to Young Life's operators by Young Life and Adventure Experiences.  Neither Young Life nor Adventure Experiences consulted or reviewed Inner Quest's manual for the operation of Freebird.  Fischer and the other Young Life

operators never reviewed the manual provided to Young Life from Inner Quest at the time Inner Quest completed construction of Freebird. The testimony establishes neither Young Life nor Adventure Experiences addressed, in any form, the operational procedures with Inner Quest. Instead, Young Life and Adventure Experiences chose to use their own experience designing and operating giant swings to develop the operational procedures for Freebird at Carolina Point.

Whatever procedures Inner Quest provided for the operation of Freebird could not have any causal connection to Plaintiff's damages. Even assuming the procedures set forth in Inner Quest's operational manual were deficient in some manner as alleged by Plaintiff, any such deficiency was not a proximate cause of Plaintiff's damages. Plaintiff's expert, William Avery, testified neither Young Life nor Adventure Experiences consulted Inner Quest's operations manual for Freebird, and therefore anything in terms of operational procedures contained therein would not be relevant to this accident (App. Ex. 3, pp. 73:11–12; 118:11–119:9; 120:9–10). Plaintiff's other expert, Edward Pribonic, concedes that if Young Life and Adventure Experiences did not consult Inner Quest's manual for guidance on the operation of Freebird, then Inner Quest could not be held liable for any alleged deficient operational procedures for Freebird (App. Ex. 4, p. 139:19–25). The uncontroverted evidence shows that to be the case—Inner Quest's operations manual was never consulted and played no role in the operations of Freebird on July 13, 2015—and therefore Plaintiff's claim seeking to hold liable Inner Quest for failing to develop safe operational procedures for Freebird fails as a matter of law.

b. <u>Inner Quest had no duty to warn Young Life.</u>

Inner Quest was under no duty to warn Young Life of any danger associated with the design or operation of Freebird because Young Life is a sophisticated user of the product. Under the sophisticated user doctrine, a manufacturer is under no obligation to warn of the dangers of a

product if the "learned intermediary" or "sophisticated user" to whom the product is delivered is able to understand and assess the risks involved.  See Bragg, 462 S.E.2d at 331–332.  Young Life is perhaps the leading company worldwide, and certainly domestically, in the operation of challenge course camps.  It has operated giant swings for many years, even having designed some of the initial swings.  Young Life was acutely aware of any safety risks associated with the single point of attachment in the design of Freebird.  As a testament to its experience and knowledge of risks attendant to the operation of challenge course elements, including Freebird, Young Life developed its own policies and procedures manual entitled "Ropes Training Manual."  As such, Young Life qualifies as a sophisticated user of Freebird, thereby relieving Inner Quest of any duty owed to warn Young Life of any risks associated with Freebird. Therefore, Plaintiff's "failure to warn" claim fails as a matter of law.

Moreover, Inner Quest did provide certain warnings to Young Life contained within the operations manuals for Freebird.  Despite this, Young Life elected not to even review the manual, thus providing another defense precluding any recovery from Inner Quest under this theory.

**III.    <u>Plaintiff's Survival Act Claim Fails as a Matter of Law</u>**

Plaintiff's survival act claims, alleged under any theory, fail as a matter of law.  The only damages recoverable under the survival statute, S.C. Code § 15-5-90, are conscious pain and suffering.  As the South Carolina Court of Appeals has explained "[t]he test of a survival action in South Carolina is whether the decedent suffered conscious pain and suffering."  <u>Rutland v. S.C. DOT</u>, 700 S.E.2d 451, 454 (S.C. Ct. App. 2010) (citing <u>Camp v. Petroleum Carrier, Corp.</u>, 28 S.E.2d 683, 685 (1944)).  South Carolina cases illustrate that in order to recover survival action damages, there must be evidence presented that the decedent, prior to death, was able to

respond to stimuli or otherwise reflect knowledge of his or her condition. See id. (distinguishing Ward v. Epting, 351 S.E.2d 867 (S.C. Ct. App. 1986) from Welch v. Epstein, 536 S.E.2d 408 (S.C. Ct. App. 2000)). Moreover, South Carolina does not recognize "pre-impact fear" as a compensable cause of action or compensable damages in an action brought pursuant to South Carolina's Survival Act statute. Id. at 454–455 (citations omitted).

There is no evidence in the record establishing Grimes endured conscious pain and suffering following her fall from Freebird. To the contrary, like in Welch and Rutland, Grimes was non-responsive to stimuli, not breathing, and did not have a pulse at the time anyone arrived at her side. There is simply no evidence sufficient to establish Grimes suffered conscious pain and suffering during the accident, and therefore all of Plaintiff's survival act claims fail as a matter of law.

## IV. Plaintiff's Punitive Damages Claims Fail as a Matter of Law.

South Carolina precludes the recovery of punitive damages in cases involving strict liability. See e.g., Barnwell v. Barber-Colman Co., 393 S.E.2d 162, (S.C. 1989) (holding that punitive damages are not recoverable for any action alleged pursuant to South Carolina's strict liability statute). Inner Quest, therefore, is entitled to judgment as a matter of law in its favor for any claim by Plaintiff for punitive damages premised upon a strict liability theory of recovery.

With respect to the remaining negligence causes of action, Plaintiff's claim for punitive damages against Inner Quest also fail as a matter of law because Plaintiff cannot put forth sufficient evidence to make the requisite showing for punitive damages. In Taylor v. Medenica, the South Carolina Supreme Court set forth the requirements for a plaintiff to be entitled to punitive damages. 479 S.E.2d 35 (S.C. 1996). In order for a plaintiff to recover punitive damages, the plaintiff bears the burden of presenting clear and convincing evidence that the

defendant's conduct was willful, wanton, or in reckless disregard of the plaintiff's rights.  See id. at 46 (citations omitted); see also S.C. Code §§ 15-33-135 & 15-51-40.  Mere gross negligence is insufficient to support a punitive damages award.  See Hicks v. McCandlish, 70 S.E.2d 629 (S.C. 1952).  Instead, Plaintiff must present by clear and convincing evidence that Inner Quest consciously disregarded a known risk of injury to others in order to be entitled to an award of punitive damages.  See Berberich, 709 S.E.2d 607 (S.C. 2011).  Plaintiff fails its burden and therefore Inner Quest is entitled to judgment in its favor as a matter of law on Plaintiff's claims for punitive damages.

Plaintiff has presented no evidence, much less clear and convincing evidence, establishing Inner Quest acted with conscious disregard of a known risk or consciously failed to exercise due care.  In fact, the opposite is shown by the evidence.  Inner Quest designed Freebird based upon a design it had previously used and that had been in safe operation for years.  The design was consistent with industry practice.  The use of the single point of attachment, which is the only design element at issue in this case, had been in use for decades and millions of swing cycles were performed safely using that design.  Therefore, it cannot be said Inner Quest consciously disregarded a known risk or consciously failed to exercise due care in selecting the single point of attachment to use for Freebird.  As such, any punitive damages claim premised upon Plaintiff's design defect theories fails as a matter of law.

With respect to Plaintiff' failure to warn theories, as discussed above, those fail as a matter of law because Plaintiff cannot establish proximate causation between Inner Quest's alleged failures and Plaintiff's damages.  Moreover, the evidence does establish Inner Quest provided an operations manual to Young Life, which Young Life simply chose not to review.  Certainly, those actions do not rise to the level of recklessness, willfulness, or wantonness

necessary to support a punitive damages award.

Plaintiff has presented no evidence sufficient to sustain his burden to seek punitive damages from Inner Quest. Therefore, Inner Quest is entitled to judgment in its favor as a matter of law.

**V.      If Plaintiff's Experts are Excluded Plaintiff's Claims Fail as a Matter of Law**

Inner Quest has contemporaneously herewith filed Motions in Limine to exclude Plaintiff's experts, Edward Pribonic and William Avery, from testifying at trial. If the Court grants those motions, Plaintiff's claims will fail as a matter of law because he will not have the requisite expert evidence in support of his claims. See e.g., Dixon v. Foot Locker, Inc., 623 F. App'x 594 (4th Cir. 2015) (upholding district court's grant of summary judgment in favor of manufacturer because the plaintiff failed to support his products liability causes of action with necessary expert testimony); Schrom v. Budget Rent-A-Car Sys., No. 6:04-21788-HFF, 2005 U.S. Dist. LEXIS 29427 (D.S.C. Nov. 14, 2005) (citing Bragg, 462 S.E.2d at 326) (granting summary judgment to defendant after excluding plaintiff's expert, without such, plaintiff would be unable to prove the product was in a defective condition unreasonably dangerous to the user).

For the reasons set forth in Inner Quest's Motions in Limine, Plaintiff's experts should be excluded from testifying at trial. If they are so excluded, Plaintiff will have no expert evidence to support his claims against Inner Quest. The design of a piece of challenge course equipment such as Freebird, as well as the development of appropriate warnings and safety procedures for such a product, requires expert testimony to aid the jury in determining the issue. If the Court excludes Plaintiff's experts, Plaintiff will be unable to satisfy his burden to set forth evidence establishing his causes of action against Inner Quest. As such, Inner Quest would be entitled to judgment in its favor as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Defendant, Inner Quest, Inc., respectfully requests the Court grant summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

s/ W. Howard Boyd, Jr.
W. Howard Boyd, Jr. (Fed Bar #1431)
*hboyd@gwblawfirm.com*
Robert C. Rogers (SC Bar #11655)
*rrogers@gwblawfirm.com*
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC  29603
(864) 271-5343
(864) 271-7502 (Fax)

Greenville, SC

Attorneys for Defendant, Inner Quest, Inc.

April 5, 2017