IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON / GREENWOOD DIVISION

| | |
|---|---|
| PHILIP WADE GRIMES, PERSONAL REPRESENTATIVE OF THE ESTATE OF O.G.,<br><br>PLAINTIFF,<br><br>VS.<br><br>YOUNG LIFE, INC, INNER QUEST, INC., AND ADVENTURE EXPERIENCES, INC.<br><br>DEFENDANTS | **DEFENDANT, INNER QUEST, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERT EDWARD PRIBONIC**<br><br>CASE NO. 8:16-CV-1410-HMH |

This matter is before the Court on the motion of Defendant, Inner Quest, Inc. ("Inner Quest") for an order excluding the Plaintiff's expert, Edward M. Pribonic ("Pribonic"). In support of its motion, Inner Quest submits this memorandum.

## FACTUAL BACKGROUND

### A. The Accident

The facts underlying this action are largely undisputed.[1] This case arises out of an accident that occurred on July 13, 2015 at the Young Life Carolina Point camp located in Pickens County, South Carolina. Olivia Grimes was killed when she fell from a Three-Person Giant Swing designed, manufactured, and installed by Inner Quest at Young Life's Carolina Point camp in Pickens County. Once installed at Carolina Point, Young Life named the swing

---

[1] See Memorandum of Authorities in Support of Motion for Summary Judgment of Defendant, Inner Quest, Inc. filed contemporaneously herewith for a full recitation of the facts of the accident.

1

"Freebird." All parties agree the accident was caused by a Young Life employee's failure to make the attachment between Grimes's harness and Freebird's swingbar. It is further undisputed that had the Young Life employee made the attachment the accident would not have occurred. The cause of the accident was not equipment failure, structural or otherwise, but was simply operator error.

Plaintiff has alleged Inner Quest is liable for design defects related to the Freebird in that it was not designed with multiple points of attachment between participant and swing. Further, Plaintiff contends Inner Quest was negligent insofar as it did not provide warnings to Young Life about the single point of attachment and did not develop safety procedures for the operation of Freebird. However, as discussed further hereinafter, in light of the evidence and testimony elicited in this case, the only issues as they relate to Inner Quest is whether the design of Freebird with the single point of attachment was unreasonably dangerous and whether Inner Quest was negligent in selecting that design.

### B. Relevant Opinions

Pribonic was retained by Plaintiff to evaluate Freebird in terms of safety, design, and operations (Pribonic Depo. 9:11–14). Pribonic offers a variety of opinions against Inner Quest, but all are based upon his opinion that the design of Freebird did not comply with standards he contends are applicable to Freebird because it only had a single point of attachment between participant and swing (Pribonic Report, p. 9, 11–13).

Pribonic's testimony as to whether Freebird was a challenge course element and Carolina Point was a challenge course versus an amusement park or amusement ride is convoluted, if not intentionally evasive. Initially, he admits Carolina Point is a challenge course facility (Pribonic Depo. 17:4–7). Later in his deposition, however, he denies this and only after extended

2

questioning by defense counsel does he again acknowledge Freebird and Carolina Point meet the definitions of challenge course element and challenge course (Pribonic Depo. 214:15–224:17; 239:25–243:13; 245:22–249:22). Regardless, however, he claims the location of an element, such as Freebird, has no bearing whatsoever on the design and operation of the product (Pribonic Depo. 55:15–20: 56:10–22).

With regard to his design opinions, Pribonic contends that Association of Challenge Course Technology ("ACCT") standard E.1.2 requires redundant points of attachment (Pribonic Report, p. 9; Pribonic Depo. 73:5–21; 163:8–12). He further claims Inner Quest deviated from ASTM standards because Freebird did not qualify as a service proven design, Inner Quest did not perform patron restraint clearance envelope testing,[2] and Inner Quest did not test Freebird; however, it appears all of these violations he believes led Inner Quest to selecting the single point of attachment over other alternative designs (Pribonic Report, p. 12–13; Pribonic Depo. 233:19–234:18). Despite offering a number of opinions based upon ASTM standards, Pribonic acknowledges South Carolina has not adopted those standards for application to Freebird (Pribonic Depo. 57:8–11; 157:13–25; 229:22–25).

Pribonic proposes as an alternative design for Freebird providing a second connection point in the form of a second carabiner, lanyard from the rider's harness to a second attachment on the swing, or additional waist belt on the participant that attaches to the swing or seat (Pribonic Expert Report, p. 12–13). However, he defers to whatever alternative is "determined by a proper risk assessment and engineering" and he has not done that. (Pribonic Report, p. 13). With that said, Pribonic cannot point to any other giant swing in a challenge course setting having any of his proposed alternative designs, and he himself has not done any engineering

---

[2] Though, Pribonic acknowledges any testing for the clearance envelope has nothing to do with the accident that is the subject of this lawsuit (Pribonic Depo. 79:24–80:14; 135:22–137:2).

3

analysis to determine whether his proposed alternative designs are viable (Pribonic Depo. 116:17–117:9).

As it relates to his design opinions, Pribonic acknowledges that the design of Freebird "had nothing to do with [Young Life's employee's] omission to hook up the single carabiner" (Pribonic Depo. 180:18–22). Further, he is not aware of any situation, in a challenge course or otherwise, where the operator failed to make the connection between participant and swing, such as occurred in this instance (Pribonic Depo. 116:9–13; 145:6–18).

In addition to his design opinions, Pribonic also faults Inner Quest for failing to develop procedures for the use of Freebird (Pribonic Report , p. 9, 11–12). However, though, he acknowledges Inner Quest provided an operations manual to Young Life in connection with the purchase of Freebird and concedes if the facts show that Young Life and Adventure Experiences never reviewed the operations manual then Inner Quest would have no liability for any alleged deficient operational procedures (Pribonic Depo. 137:21–24; 139:19–25; 164:3–14). By the end of his deposition, and in response to questioning from Plaintiff's counsel, it appears he retracts any opinions against Inner Quest as it relates to the operation of Freebird (Pribonic Depo. 230:15–20).

### C. Pribonic's Lack of Experience

Pribonic, like Plaintiff's other expert, William Avery, lacks any substantive experience with the challenge course industry or with three-person giant swings. At the time of his deposition, Pribonic was not a current member of ACCT and previously had only been a member for a couple of years (Pribonic Depo. 122:3–13). He never attended in person any ACCT meetings (Pribonic Depo. 244:9–12). He is not familiar with the number of giant swings in use at challenge courses during 2015—the time period relevant to this lawsuit (Pribonic Depo. 16:4–

7, 18–23; 17:1–3). He has no knowledge about the number of cycles of giant swings at challenge course camps in 2015 (Pribonic Depo. 16:11–14). He has no knowledge of how long three-person giant swings with a single point of attachment have been in existence or the number of swing cycles performed safely over the years with that type of design, though he agrees that figure could be in the millions (Pribonic Depo. 146:4–16). He cannot identify any challenge course giant swing as of July 2015 that had multiple points of attachment, ultimately acknowledging he "[does not] have any information on any challenge course swing at all" (Pribonic Depo. 103:5–15; 104:3–6). He does not know how many three-person giant swings rely upon the single point of attachment between participant and swing or if all of Young Life's swings are of this design (Pribonic Depo. 145:19–25). Pribonic has no knowledge of how many three-person giant swings Young Life operates (Pribonic Depo. 146:1–3). He is not aware of any challenge courses that requires two operators for the operation of a giant swing (Pribonic Depo. 103:21–104:2). Despite offering opinions on Freebird, he has never observed a giant swing of any kind in operation at a challenge course facility (Pribonic Depo. 17:8–17). Similarly, Pribonic has never trained anyone, nor has he observed the training of anyone, on the operation of a giant swing at a challenge course (Pribonic Depo. 17:18–24; 114:12–13). He personally has never had any involvement with a giant swing in the challenge course setting (Pribonic Depo. 36:6–15). He has never previously been qualified to offer opinions on ACCT standards as they relate to giant swings, and has only been qualified to testify on ACCT standards in other contexts six or so times (Pribonic Depo. 61:20–62:8). He has never been qualified as an expert to testify on the redundancy he claims is required under ACCT standards (Pribonic Depo. 65:12–15; 66:5–14).

Pribonic's only involvement of any kind with three-person giant swings, that he can

recall, prior to his retention as an expert in this case was that he designed a swing and the operations manual for that swing for an amusement park, which never operated, and he has inspected one other in relation to litigation following an incident involving a fatality (Pribonic Depo. 20:22–34:25). For another giant swing, Pribonic casually reviewed it at an amusement park, but did not do any form of inspection (Pribonic Depo. 30:23–31:10). None of those devices utilized the same or similar harnessing system as Freebird. (Pribonic Depo. 20:22–34:25; 184:19–23).

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, a trial judge serves as a gatekeeper to ensure that any and all expert testimony is not only relevant to the facts of the case, but also rests on a reliable foundation. Daubert v. Merrell Pharms. Inc., 509 U.S. 579, 589 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). Relevant evidence is evidence that helps the trier of fact to understand the evidence or to determine a fact in issue. Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017) (citing Daubert, 509 U.S. at 591). Reliable expert evidence is that which is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Id. (quoting Oglesby v. Gen. Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999). In Daubert. the U.S.

Supreme Court listed factors to help evaluate the reliability of scientific expert testimony, which included: (1) whether the particular scientific theory 'can be (and has been) tested'; (2) whether the theory 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error'; (4) the 'existence and maintenance of standards controlling the technique's operation'; and (5) whether the technique has achieved 'general acceptance' in the relevant scientific or expert community. United States v. Crisp, F.3d 261, 266 (4th Cir. 2003) (quoting Daubert, 509 U.S. at 593–594.

Analyzing the applicability of Daubert to experiential expert testimony, the Supreme Court has held that the trial judge's general 'gatekeeping' obligation applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho, 526 U.S. at 147. The Court further advised that "a trial court may consider one or more of the more specific factors that Daubert mentioned when doing so will help determine that testimony's reliability." Id. As the Fourth Circuit has emphasized regarding any expert opinion, "[a] reliable expert opinion must be based on scientific, technical or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby, 190 F.3d at 250.

Of particular relevance to this case, the Fourth Circuit has held that a "plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field." Alevromagiros v. Hechinger Co., 993 F.2d 417, 422 (4th Cir. 1993). Recently, the Fourth Circuit explained that where an expert offers testimony about a proposed alternative design, but fails to provide any testing or data showing that the proposed alternative design would be safer than the original design, such opinion testimony should be excluded. Nease, 848 F.3d at 234 (citing Oglesby, 190 F.3d at 249).

7

**ARGUMENT**

In the Fourth Circuit, the proponent of expert testimony must establish admissibility by a preponderance of proof. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001) (citing Daubert, 509 U.S. at 592 n.10). In a products liability case, a plaintiff may not prevail "by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field." Alevromagiros, 993 F.2d at 422; see also Nease, 848 F.3d at 234 (citations omitted). In this case, Pribonic was proffered by Plaintiff to render opinions on the design of Freebird and Inner Quest's alleged negligence for failing to develop appropriate procedures for the operation of Freebird. This motion takes exception with Pribonic's experiential-based qualifications to render such opinions, as well as the reliability of his opinions when measured against the standards set forth above.

### I. Pribonic Lacks the Necessary Experience to Qualify as an Expert.

Pribonic lacks the requisite experience and specialized knowledge to be qualified under Daubert and its progeny to offer opinions related to the design and operation of challenge course elements. Accordingly, the Court, in serving its gatekeeping function pursuant to Federal Rule of Evidence 702, should exclude Pribonic from offering any expert testimony at the trial of this case.

Pribonic has minimal experience with ACCT standards and no significant experience within the challenge course industry that would be sufficient to qualify him as an expert capable of rendering the opinions that he has in this case. Pribonic acknowledges, although reluctantly, that Freebird is a challenge course element and Carolina Point is a challenge course as defined by ACCT standards. While Pribonic has notable experience within the amusement industry, there is a marked difference in terms of the requirements upon safe design and operation from

amusement park rides—i.e. roller coasters, twist-a-whirls, and similar devices open to the public—and a challenge course element at a Christian summer camp. His testimony establishes he has no experience whatsoever working with three-person giant swings in the challenge course setting. His only involvement of any kind with challenge courses is with zip-lines. Given that Carolina Point is a challenge course and Freebird is a challenge course element, Pribonic's lack of experience in the challenge course industry renders him unqualified as an expert in this case.

Moreover, his involvement with ACCT, the body whose standards he relies upon in rendering a number of opinions in this case, is similarly limited. At the time of his deposition, he was not a member of ACCT. In his career, he has only been involved with ACCT for a "couple of years." He never attended an annual meeting of that organization.

Beyond the challenge course setting, Pribonic also has extremely limited experience with three-person giant swings. Pribonic has only had personal involvement with three other giant swings, and one of those instances consisted of nothing more than taking a quick look at one at a location where he was undertaking other work.

Based upon Pribonic's background, Plaintiff simply cannot meet his burden of establishing by a preponderance of the evidence that Pribonic has experience or specialized knowledge that would assist the jury in understanding the challenge course industry, challenge course design, or any procedures related to the challenge course industry or giant swings. Accordingly, Pribonic cannot offer any relevant testimony and therefore should be excluded. See Nease, 848 F.3d at 229.

## II. Pribonic's Opinions are Unreliable and Should be Excluded.

The burden upon a Plaintiff in a products liability action is to present evidence that the alternative design he proposes is feasible and is favored over the original design because it makes the product safer. See e.g. Branham v. Ford Motor Co., 701 S.E.2d 5, 16 & n.16 (S.C. 2010). While Pribonic has proposed several alternative designs for Freebird, which he contends would have made it safer, he admits he has done no engineering analysis to determine whether they are feasible. Further, he cannot point to any other swing in existence having the alternative designs he proposes. This alone fails the first burden upon Plaintiff, which is to show the alternative design is feasible. Moreover, Pribonic has done no testing and has presented no data establishing that two points of attachment, whether his proposed alternative designs or otherwise, is safer than a single point of connection. Absent any testing or experience in the field to verify his hypothesis that two points of attachment would have increased the safety of Freebird, his design opinions are merely *ipsi dixit* and should be excluded. See Nease, 848 F.3d at 234 (quoting Oglesby, 190 F.3d at 249) (holding that the failure of an expert to verify the increased safety of proposed alternative designs meant his opinions that it was safer was not admissible because the opinion was "unsupported by any evidence such as test data or relevant literature in the field").[3]

To the extent Pribonic maintains the opinion that Inner Quest is liable for failing to develop policies and procedures for the safe operation of Freebird, that opinion should be excluded as unreliable because it is not supported by the evidence of the record. See e.g. Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994) (holding that where an

---

[3] Indeed, it would be difficult to imagine how Pribonic could establish that any alternative design was safer than the single point of attachment given the service-proven performance of three-person giant swings with a single point of attachment over many years of experience in the field.

expert's opinions are refuted by the uncontroverted evidence in the record, those opinions should be excluded as unreliable). In this instance, the uncontroverted testimony is that neither Adventure Experiences nor Young Life reviewed the operations manual for Freebird that Inner Quest gave to Young Life, incorporated the operations manual into the training provided to Young Life employees on the operation of Freebird, and that Inner Quest was not involved in any capacity in training Young Life employees on the operation of Freebird (Brian Johnson Depo. 93:10–94:8; Madeline Arden Depo. pp. 16, 19, 39, 40-41; Anna Fischer Depo. pp. 40–42; Chris Carter Depo. p. 49; Elizabeth Reeser Depo. pp. 67–69). As he acknowledges at his deposition, if Inner Quest's manual was never reviewed by Adventure Experiences or Young Life, then Inner Quest would have no liability for any alleged deficient operational procedures. Accordingly, any opinion that Inner Quest may be held liable for alleged operational procedures should be excluded as it is in direct conflict with the uncontroverted evidence of the record.

### III. **Pribonic's Opinions are not relevant to any issue in dispute.**

As noted hereinabove, Pribonic's primary opinions against Inner Quest relate to the design of Freebird, namely that it utilized only a single point of attachment between Grimes and the swingbar. However, Pribonic concedes the design of Freebird played no role whatsoever in the Young Life's employee's failure to make the critical connection (Pribonic Depo. 180:18–22). As such, the design cannot be said to be a proximate cause of Plaintiff's damages. Accordingly, any opinions relating to the design of Freebird should be excluded as irrelevant to the issues to be decided by the jury. See Nease, 848 F.3d at 229 (citations omitted).

Additionally, as Pribonic acknowledges, Young Life is an experienced operator of challenge course elements, including giant swings (Pribonic Depo. 143:14–20). As such, under the sophisticated user doctrine Inner Quest had no duty to provide any warning of any kind or

provide additional guidance on operational procedures of Freebird to Young Life.[4]  See Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321, 331–332 (S.C. Ct. App. 1995).  Since it is established as a matter of law Inner Quest had no duty to warn or otherwise provide operational procedures to Young Life for the operation of Freebird, Pribonic's opinion on this topic should be excluded as not relevant insofar as it will not assist the jury to decide an issue in dispute in the case. See Nease, 848 F.3d at 229 (citations omitted).

## CONCLUSION

Based upon the foregoing authorities, Defendant, Inner Quest, Inc., respectfully requests the Court issue an Order excluding each of Pribonic's opinions against Inner Quest.

|  |  |
|---|---|
|  | s/ W. Howard Boyd, Jr. |
|  | W. Howard Boyd, Jr. (Fed Bar #1431) |
|  | *hboyd@gwblawfirm.com* |
|  | Robert C. Rogers (SC Bar #11655) |
|  | *rrogers@gwblawfirm.com* |
|  | GALLIVAN, WHITE & BOYD, P.A. |
|  | 55 Beattie Place, Suite 1200 |
|  | P.O. Box 10589 |
|  | Greenville, SC  29603 |
|  | (864) 271-5343 |
| Greenville, SC | (864) 271-7502 (Fax) |
| April 5, 2017 | Attorneys for Defendant, Inner Quest, Inc. |

---

[4] See § II.b. of the Memorandum of Authorities in Support of Motion for Summary Judgment of Defendant, Inner Quest, Inc. filed contemporaneously herewith for a complete discussion of the sophisticated user defense.